IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No._____

**ROBERT FIELDS**, and
**LORENA ORTIZ**, on behalf of themselves and all others similarly situated,

    Plaintiffs,

V.

**NESTLE PURINA PETCARE CO.** a Missouri Corporation,

    Defendant.

___

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**
___

### INTRODUCTION

1. Plaintiffs Robert Fields and Lorena Ortiz by and through their attorneys, Liddle Sheets Coulson, P.C. and Fuicelli & Lee, P.C., bring this class action complaint against Defendant Nestle Purina Petcare Co. ("Defendant"), which owns and operates a pet food manufacturing facility located at 4555 York Street, Denver, CO 80216 (the "Facility").

2. Through its operation of the Facility, Defendant released, and continues to release, noxious odors that invade Plaintiffs' property, causing property damage through nuisance and negligence.

### PARTIES

3. At all times relevant hereto, Plaintiff Robert Fields has been a citizen of Colorado and has resided and intends to remain at 3722 N. Marion St., Denver Country, Denver, Colorado.

4. At all times relevant hereto, Plaintiff Lorena Ortiz has been a citizen of Colorado and has resided and intends to remain at 4740 Fillmore St., Denver County, Denver, Colorado.

1

5. Defendant Nestle Purina Petcare Co. is a for-profit company incorporated in the State of Missouri, with its principal place of business in Missouri. Defendant's corporate activities are directed, controlled, and coordinated from its headquarters in Missouri.

6. Defendant's pet food manufacturing facility is located at 4555 York Street, Denver, CO 80216.

7. Upon information and belief, Defendant, including its predecessors and agents, constructed the Facility and exercised control and ownership over the Facility at all relevant times hereto.

## JURISDICTION AND VENUE

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(a). Jurisdiction is proper because the amount in controversy exceeds $75,000, exclusive of interest and costs. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), because a substantial portion of the events or omissions giving rise to Plaintiffs' claims took place in this District, and because much of the property that is the subject of this action is situated in this District.

## GENERAL ALLEGATIONS

9. Defendant operates an industrial pet food manufacturing facility surrounded by residential properties.

10. Plaintiffs reside within 1 mile of the Facility's property boundary.

11. Plaintiffs' property has been and continues to be physically invaded by noxious odors.

12. The noxious odors which entered Plaintiffs' property originated from Defendant's Facility.

### *Defendant's Industrial Pet Food Manufacturing Process*

13. Defendant's industrial operations at the Facility include the production of pet food products.

14. Upon information and belief, Defendant's pet food products include animal-derived raw proteins and animal fats, many of which are highly odiferous.

15. Upon information and belief, Defendant mixes the raw ingredients according to numerous pet food recipes, which are dried and formed into a dough.

16. Upon information and belief, the dough for each pet food product is then cooked and extruded into its kibble shape.

17. Upon information and belief, the pet food products then undergo a drying process prior to being packaged and sold.

18. Defendant's cooking process produces highly odiferous emissions.

### *Defendant's Noxious Fumes and Emissions*

19. The emissions produced by Defendant's cooking process are noxious and highly odiferous.

20. Defendant has acknowledged that the Facility is the source of the odors invading Plaintiffs' property.

21. Despite Defendant's representations, the odors caused by the Facility have been and continue to be dispersed across all public and private land in the class area.

22. A properly designed, operated, and maintained pet food manufacturing Facility will adequately capture, remove, and dispose excess noxious emissions and will not emit noxious odors into the ambient air as fugitive emissions.

23. Defendant is required to control its odorous emissions by, among other things, operating and maintaining the Facility in a manner that adequately captures, controls, and mitigates odorous emissions so as to prevent them from escaping into the ambient air surrounding the Facility and implementing other reasonably available odor mitigation, elimination, and control systems at the Facility.

24. Defendant has failed to install, maintain, operate, develop, and/or implement adequate odor mitigating strategies, processes, technology, and equipment to control its odorous emissions from the Facility and prevent those odors and emissions from invading the homes and properties of Plaintiffs and the putative Class.

25. Defendant's failures to prevent noxious off-site odors include, but are not limited to: operating and maintaining inadequate systems for operating and maintaining a pet food cooking process that inadequately captures, controls, and/or mitigates odors; failing to adequately treat and filter the exhaust produced through its industrial operations prior to emitting it into the ambient air; failing to develop and/or implement an adequate odor prevention plan; and failing to utilize other odor prevention, elimination, and mitigation measures and technology available to Defendant.

***Impacts of Defendant's Actions and Omissions on Plaintiffs and the Putative Class***

26. The Facility and its odorous emissions have been the subject of frequent complaints from residents in the nearby residential area.

27. Numerous residents have taken the time to file official complaints regarding the Defendant's noxious emissions with the Colorado Department of Health and Environment (CDHE), including the following:

   a. In a complaint lodged on January 31, 2023, the complainant reported that "at least once a week. . .the smell is so strong it makes you gag."

   b. In a complaint lodged on August 30, 2022, the complainant reported that "Purina is releasing something so toxic that it's making our eyes water over a mile away. . ."

    c.    In a complaint lodged on June 7, 2022, the complainant reported that the "smell from the Purina plant is making her sick."

28.    After investigating some of the above referenced complaints, CDHE employees made the following findings:

    a.    "Visited the area around the Valdez Library around 10:20 am on November 11, 2021. The pet food odor was very strong at the time of the visit. I recorded two exceedances of the State Detection threshold for odors at 10:26am and 10:51am. Reported these findings back to the citizen and let him know we will forward these odor exceedances to the State for enforcement of Reg 2 for odor."

    b.    "Emailed [redacted] on 10/7 to follow up. I drove to the neighborhood on the morning of 10/7 and observed a stronger than usual odor in the vicinity of 47th and Gaylord. The nasal ranger showed a State regulation exceedance of the 8:1 threshold. This was documented. Brian Beyer from the plant met me in the neighborhood; he also smelled it but his nose is not as sensitive to odor due to years of working in the plant. The plant's plasma systems were supposedly operating normally at the time when I was north of the plaint; however, I learned that the units are overdue for routine maintenance due to US/Canada border closures from the COVID pandemic. The maintenance company is Canadian and could not get here."

29.    Similarly, more than 50 households within the proposed Class Area have contacted Plaintiffs' counsel documenting the odors they attribute to the Defendant's Facility.

30.    Below is a small sampling of the factual allegations made by putative class members to Plaintiffs' counsel, demonstrating that the Facility is the source and cause of the odor emissions, which have damaged their neighboring properties.

    a.    Plaintiff Robert Fields stated that "can't plan an outside event. . .can't have windows open. . .you would rather be too hot inside then have the smell come in."

    b.    Plaintiff Loren Ortiz stated that the "smell is horrible and she does not even want to go outside."

    c.    Putative class members Roxann McGrew and Boby Ward reported that "[t]he offensive odors make you nauseous. Depending on how strong the odor is it can take hours for the smell to get out of your home."

    d.    Putative class members Robert Boughner and Kelly MacNeil reported "I would describe the smell as rancid. It's like someone barfed in your back yard and then it baked in the sun and then you put a fan on the smell to keep it circulating."

    e.    Putative class member Juanita Chavez reported that "The smell causes headaches and nausea, it gets in the house and can also smell clothes of the smell of throw up."

    f.    Putative class members Carlos Gente Zapata Dreena and Achell Elaine Pack reported "We live in Viva Apartments (third floor) you open this window at different times of the day and get a rancid smell coming from Purina. Smell is so strong it gives you headaches, upsets your stomach."

31.    Defendant's well documented pattern of failing to control its emissions is further demonstrated by the following:

    a.    Numerous residents have filed complaints with CDHE directly attributing noxious odors to Defendant's Facility.

    b.    On November 5, 2021, the CDHE issued a Notice of Violation ("NOV") after visiting Defendant's facilities and observing odors beyond permit limits. The NOV was issued because Defendant failed to ensure that emissions of odorous air components remain at the permitted ratio.

    c.    On June 23, 2022, a Consent Order was entered in response to the November 5, 2021, NOV, in which Defendant agreed to comply with odor emissions and the proposed Odor Control Plan.

    d.    In addition to the above, on October 14, 2021, the City of Denver issued a Notice of Administrative Citation in which it fined the Defendant $12,000 for repeated emissions of noxious odors.

    e.    On October 26, 2021, the City of Denver issued Defendant a Warning letter based on an investigation performed on October 7, 2021 wherein strong odors were found and air sampling indicated odors in excess of the applicable regulations.

    f.    There have been numerous media reports regarding Defendant's odors and emissions.

32.    Defendant's Facility has emitted, and continues to emit, objectionable odors that are detectable outside the bounds of its property.

33. The Facility has emitted objectionable odors that have caused negative impacts to its neighbors throughout the Class Area.

34. Plaintiffs and members of the putative class suffer serious discomfort because of Defendant's noxious odors that interfere with their use and enjoyment of property.

35. The foul odors emitted from the Facility are offensive, would be offensive to a reasonable person of ordinary health and sensibilities, and have caused property damage.

36. The invasion of Plaintiffs' property and that of the Class by noxious odors has reduced the value of that property and has interfered with the use and enjoyment of that property, resulting in damages.

37. The Class Area is home to a wide range of commercial and recreational activities, including but not limited to manufacturing, construction, retail trade, ministry, education, dining, and lodging.

38. Plaintiffs and the Class are a limited subset of individuals in Denver County, and the Class Area, which includes only owner/occupants and renters of residential property who live within the Class Area and fit within the Class Definition.

39. Members of the public, including but not limited to businesses, employees, commuters, tourists, visitors, customers, clients, and students, have experienced and been harmed by the fugitive noxious odors emitted from the Facility into public spaces; however, unlike Plaintiffs and the Class, members of the public who are outside of the Class Definition have not suffered damages of the same kind, in the form of diminished property values and/or loss of use and enjoyment of their private property.

40. Defendant negligently and knowingly failed to properly design, operate, repair, and/or maintain the Facility and its associated operations, thereby causing the invasion of Plaintiffs' property by noxious odors on unusually frequent, intermittent and ongoing reoccurring occasions.

7

## CLASS ALLEGATIONS

### A. Definition of the Class

41. Plaintiffs bring this action individually and on behalf of all persons as the Court may determine to be appropriate for class certification, pursuant to F.R.C.P. Rule 23. Plaintiffs seek to represent a Class of persons preliminarily defined as:

> **All owner/occupants and renters of residential property residing within one mile (1) of the Facility's property boundary.**

The definitional boundary is subject to modification as discovery will disclose the location of all persons properly included in the Class ("Class Members"). Excluded from the Class are Defendant and its affiliates, predecessors, successors, officers, directors, agents, servants, or employees, and the immediate family members of such persons. Plaintiffs reserve the right to propose one or more sub-classes if discovery reveals that such subclasses are appropriate.

### B. Numerosity

42. The approximate number or residential households withing the Class Area is over 2,000.

43. The Class consists of thousands of members and therefor is so numerous that joinder is impracticable.

### C. Commonality

44. Numerous common questions of law and fact predominate over any individual questions affecting Class Members, including, but not limited to the following:

    a. whether and how Defendant negligently and knowingly failed to design, operate, and maintain the Facility and its operations;

    b. whether Defendant owed any duties to Plaintiffs;

      c.      which duties Defendant owed to Plaintiffs;

      d.      which steps Defendant has and has not taken in order to control the emission of noxious odors through the design, operation, and maintenance of its Facility and its respective operations;

      e.      whether Defendant met its standard of care with respect to its operation, design, and maintenance of the Facility and its operations;

      f.      whether and to what extent the Facility's noxious odors were dispersed over the Class Area;

      g.      whether it was reasonably foreseeable that Defendant's failure to properly design, operate, and maintain the Facility and its operations would result in an invasion of Plaintiffs' property interests;

      h.      whether the degree of harm suffered by Plaintiffs and the Class constitutes a substantial annoyance or interference; and

      1.      the proper measure of damages incurred by Plaintiffs and the Class.

**D.**    **Typicality**

45.    Plaintiffs have the same interests in this matter as all the other members of the Class and their claims are typical of all members of the Class. If brought and prosecuted individually, the claims of each Class Member would require proof of many of the same material and substantive facts, utilize the same complex evidence including expert testimony, rely upon the same legal theories and seek the same type of relief.

46.    The claims of Plaintiffs and the other Class Members have a common cause, and their damages are of the same type. The claims originate from the same failure of the Defendant to properly design, operate, and maintain the Facility and its operations.

47.    All Class Members have suffered injury in fact as a result of the invasion of their property by Defendant's release of noxious odors, causing damage in the form of losses to property values.

### E.   Adequacy of Representation

48.   Plaintiffs' claims are sufficiently aligned with the interests of the absent Class Members to ensure that the Class's claims will be prosecuted with diligence and care by Plaintiffs as representative of the Class. Plaintiffs will fairly and adequately represent the interests of the Class and do not have interests adverse to the Class.

49.   Plaintiffs have retained the services of counsel who are experienced in complex class action litigation and in particular class actions stemming from invasions of noxious industrial emissions. Plaintiffs' counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent Plaintiffs and all absent Class Members.

### F.   Class Treatment Is a Fair and Efficient Method of Adjudication

50.   A class action is a fair and efficient method of adjudication of the controversies raised in this Complaint because:

   a.   Individual claims by the Class Members would be impracticable as the costs of pursuit would far exceed what any one Class Member has at stake;

   b.   Individual claims by class members would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would present Defendant with incompatible standards of conduct;

   c.   Individual claims by individual members of the class would create a risk of adjudications which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

   d.   Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class Members are unlikely to have an interest in separately prosecuting and controlling individual actions;

   e.   In view of the complexity of the issues or the expenses of litigation, the separate claims of individual members are likely insufficient in amount to support the costs of filing and litigating separate actions;

   f.   Plaintiffs seek equitable relief relating to Defendant's common actions and failures to act, and the equitable relief sought would commonly benefit the class as a whole;

   g. The concentration of litigation of these claims in one action will achieve efficiency and promote judicial economy; and

   h. The proposed class action is manageable.

51. The prosecution of separate actions by or against individual members of the Class would create the risk of (i) inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for the party opposing the Class; and (ii) adjudications with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

52. Notice can be provided to members of the Class by U.S. Mail and/or publication.

## I. CAUSE OF ACTION ONE

## NUISANCE

53. Plaintiffs restate allegations 1 through 52 of this Complaint as if fully rewritten herein.

54. The noxious odors, which entered the properties of Plaintiffs and the putative class originated from the facility constructed, maintained and operated by Defendant.

55. The noxious odors invading the property of Plaintiffs and the putative class are substantial, indecent and offensive to the senses, and obstruct the free use of their property so as to substantially and unreasonably interfere with the comfortable enjoyment of life and property.

56. Defendant owed and continues to owe a duty to Plaintiffs to prevent and abate the interference with the invasion of the private interests of the Plaintiffs.

57. By constructing and then failing to reasonably repair and maintain its facility, Defendant has intentionally and negligently caused an unreasonable and substantial invasion of Plaintiffs' interest in the use and enjoyment of their property.

58. As a foreseeable, direct and proximate result of the foregoing conduct of Defendant, Plaintiffs suffered injuries and damages to their properties as alleged herein.

59. Plaintiffs did not consent to the invasion of their properties by noxious odors.

60. By causing noxious odors produced and controlled by Defendant to physically invade Plaintiffs' land and property, Defendant intentionally, recklessly, and negligently created a nuisance which substantially and unreasonably interfered with Plaintiffs' use and enjoyment of their property.

61. Whatever social utility Defendant's facility provides is clearly outweighed by the harm suffered by the Plaintiffs and the putative class, who have on frequent occasions been deprived of the full use and enjoyment of their properties and have been forced to endure substantial loss in the value of their properties.

62. Defendant's substantial and unreasonable interference with Plaintiffs' use and enjoyment of their properties constitutes a nuisance for which Defendant is liable to Plaintiffs for all damages arising from such nuisance, including compensatory and injunctive relief not inconsistent with Defendant's State and Federally enforced Air Permits.

## II. CAUSE OF ACTION TWO

### NEGLIGENCE

63. Plaintiff restates allegations 1 through 62 of this Complaint as if fully rewritten herein.

64. Defendant negligently and improperly constructed, maintained and operated the facility such that it caused the invasion of noxious odors onto Plaintiffs' homes, land, and property on occasions too numerous to mention.

65. As a direct and proximate result of Defendant's negligence in constructing, maintaining and operating the facility, Plaintiff's property, on occasions too numerous to mention, was invaded by noxious odors.

66. As a further direct and proximate result of the foregoing conduct of the Defendant, Plaintiffs suffered damages to their property as alleged herein.

67. The invasion and subsequent damages suffered by Plaintiffs were reasonably foreseeable by the Defendant.

68. By failing to properly construct, maintain and operate its facility, Defendant failed to exercise the duty of ordinary care and diligence, which it owes to Plaintiffs, so that noxious odors would not invade Plaintiff's property.

69. A properly constructed, operated, and maintained facility will not emit noxious odors into neighboring residential areas.

70. By failing to properly construct, maintain and operate its facility, Defendant has intentionally caused the invasion of the property of Plaintiffs and the putative class by noxious odors. Such failures include, but are not limited to the failure to maintain and/or install adequate odor controls.

71. Defendant knowingly breached its duty to exercise ordinary care and diligence when it improperly constructed, maintained and operated the facility and knew, or should have known upon reasonable inspection that such actions would cause the property of Plaintiffs and the putative class to be invaded by noxious odors.

72. As a direct and proximate result of the failure of Defendant to exercise ordinary care, Plaintiffs' homes were invaded by noxious odors causing and constituting damage to their property.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of the proposed Class, pray for judgment as follows:

A.   Certification of the proposed Class by order pursuant to F.R.C.P. 23;

B.	Designation of Plaintiffs as representatives of the proposed Class and designation of their counsel as Class Counsel;

C.	Judgment in favor of Plaintiffs and the Class Members and against Defendant;

D.	Award Plaintiffs and the Class members compensatory damages and attorneys' fees and costs, including pre-judgment and post-judgment interest thereupon;

E.	An Order holding that entrance of the aforementioned noxious odors upon Plaintiffs' property constituted a nuisance;

F.	An award to Plaintiffs and the Class Members of injunctive relief not inconsistent with Defendant's state and federal regulatory obligations; and

G.	Such further relief as the Court deems just and proper.

Dated: May 28, 2024.

LIDDLE SHEETS COULSON, P.C.

*s/Laura L. Sheets*
Steven D. Liddle
Laura L. Sheets
Liddle Sheets Coulson, PC
975 E. Jefferson Ave
Detroit, MI 48207
(313) 392-0015
sliddle@lsccounsel.com
lsheets@lsccounsel.com
ncoulson@lscounsel.com

*s/R. Keith Fuicelli*
R. Keith Fuicelli, #32108
FUICELLI & LEE, P.C.
1731 Gilpin Street
Denver, Colorado 80218
 (303) 355-7202
 (303) 355-7208
keith@coloradoinjurylaw.com
*Attorneys for Plaintiffs*

## PLAINTIFFS DEMAND TRIAL BY JURY ON ALL ISSUES

## DEMAND FOR RELIEF

**WHEREFORE,** Plaintiffs requests that this Court enter judgment in favor of Plaintiffs and against Defendant Nestle Purina Petcare Co. as follows: (a) Certification of the proposed Class pursuant to F.R.C.P. Rule 23; (b) Designation of Plaintiffs as representative of the proposed Class and designation of her counsel as Class Counsel; (c) Judgment in favor of Plaintiff and the Class members and against Defendant; (d) Award Plaintiffs and the Class members compensatory damages, and attorneys' fees and costs, including pre-judgment and post-judgment interest thereupon; and (e) Such further relief as the Court deems just and proper.

DATED this 28th day of May 2024.

LIDDLE SHEETS COULSON, P.C.

*s/Laura L. Sheets*
Steven D. Liddle
Laura L. Sheets
Liddle Sheets Coulson, PC
975 E. Jefferson Ave
Detroit, MI 48207
(313) 392-0015
sliddle@lsccounsel.com
lsheets@lsccounsel.com
ncoulson@lscounsel.com

*s/R. Keith Fuicelli*
R. Keith Fuicelli, #32108
FUICELLI & LEE, P.C.
1731 Gilpin Street
Denver, Colorado 80218
 (303) 355-7202
 (303) 355-7208
keith@coloradoinjurylaw.com
*Attorneys for Plaintiffs*